IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENE ALLEN COMBS,<br><br>                     Petitioner,<br><br>          vs.<br><br>SHAWN HATTON, Warden, Correctional Training Facility,<br><br>                     Respondent. | No. 2:17-cv-00788-JKS<br><br>MEMORANDUM DECISION |

Gene Allen Combs, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Combs is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at the Correctional Training Facility. Respondent has answered, and Combs has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On February 10, 2009, Combs, along with co-defendant Henry Don Williams, was charged with the murder of Matt Garcia. On May 7, 2010, Combs proceeded to a jury trial. On direct appeal of his conviction, the California Court of Appeal recounted the following facts underlying the charges against Combs and the evidence presented at trial:

> [Combs] was friends with Williams,[FN1] and the latter introduced him to his cocaine and methamphetamine dealer Ryan Estes, who lived on Silverado Drive in Fairfield.
>
> > FN1. Williams was tried separately and convicted of first degree murder. His conviction was affirmed in case No. A130138.
>
> Around 3:30 p.m. on Labor Day, 2008, [Combs] called Estes and asked to buy methamphetamine. The men met about 20 minutes later, and [Combs] gave Estes $50 to obtain the drugs. When Estes failed to show up an hour later as agreed, [Combs] called

Estes and sounded "a little irritated." Estes told him it would take another hour. Estes did not obtain the drugs, but instead bought beer and went to a party.

Around 7:00 p.m., [Combs] called Williams and told him "he had been ripped off by his buddy for 50 bucks." Williams told him Estes was at home, but there were "a couple of guys there" and he "shouldn't go alone." [Combs] was intimidated by Estes because he was "a big guy." The two made plans to meet at a Popeye's Chicken and then go together to Estes's house. [Combs] met Williams at the restaurant and got in the back seat of his car. Nicole Stewart, Williams's pregnant girlfriend, was driving. Williams told [Combs] that Estes had recently "shorted" him on a bag of drugs, "[s]o [Williams] was upset also." They agreed to go to Estes's house and "confront him."

[Combs] was "pissed" and continued to call Estes on the way to his house. Stewart parked the car across the street from Estes's house. Williams went to the door, carrying a black box Stewart had seen before "around the house." Williams returned to the car after talking with Estes's sister, and indicated Estes was not at home. [Combs] said " 'Well, we'll catch him later.' "

Stewart drove down Silverado Drive and stopped at a stop sign. A car approached, and [Combs] and Williams "were wondering" whether Estes might be in it. [Combs] said the car had turned around in front of Estes's house, and had flashed its lights. [Combs] and Williams "were still talking back and forth if it could be [Estes]." Both men were still upset and angry. Williams told Stewart to pull over, and got out of the car, while [Combs] remained inside. Stewart then heard three popping sounds from behind her. Williams returned and [Combs] told her to start the car.

Williams got back in the car, holding his shirt in his hands. He was using the shirt to rub something, which Stewart thought was a gun. [Combs] told him to "put it somewhere in the front of the car" by the motor, because it "cleans off the fingerprints," but Williams said he was going to throw it in the bushes.

Williams told Stewart to drive them to his mother's house. When they arrived, Williams went instead to the house of Francisco Perez, a neighbor. [Combs] got in the front seat of the car, and Stewart drove him back to his car, which he had left at Popeye's. Williams gave the gun and his shirt to Perez and asked him to "dispose of the gun." Perez threw it "into the water" by the Benicia Bridge.

[Combs] first learned someone had been killed on Silverado Drive the next morning when he was watching the news. Matt Garcia, a Fairfield city councilman, died after being shot in front of a friend's house on Silverado Drive. It "dawned on [Combs] . . . 'Oh, wait a minute . . . we were out there last night.'" [Combs] told a friend he thought Williams "shot that councilman last night."

[Combs] contacted the police about a week and a half later, telling them "I know who shot the councilman. I was with that person who did it." He told district attorney investigator Kurtis Cardwell he was "[a]ngry, frustrated, upset [and] pissed off" about being "ripped off" by Estes. [Combs] admitted leaving Estes phone messages in which he cursed at Estes and threatened to burn his house and car down. He also left Estes a message around 10:30 p.m. on Labor Day stating "'[t]hose bullets down the street, nigga, were meant for you.'"

> [Combs] also told Caldwell he had "brokered a deal [for Williams] to purchase a gun" weeks before the murder. [Combs] testified he drove with Williams to purchase the gun because [Combs] knew the seller but Williams did not. When they arrived, Williams gave [Combs] the money for the gun, and [Combs] went inside the seller's house while Williams waited in the vehicle. [Combs] gave the money to the seller and took the gun back to Williams. He asked Williams, "'How do you know that thing even works?'" and Williams pointed it at him and said "'How about I try it on you?'" [Combs] felt "uncomfortable" and told him he was going to walk home. [Combs] agreed Williams "had a . . . propensity to want to point that gun at somebody."
>
> [Combs] told Cardwell "he knew Henry Williams had a gun . . . when . . . Williams was walking up to Estes'[s] house in Cordelia that night." [Combs] testified, however, he was lying when he told police Williams went to Estes's front door with a black box, a bag, or what could have been a gun because he "was under the impression [he] was going to be released for cooperating with the police." He testified the next time he saw the gun after its purchase was "when Mr. Williams had got into the car after the shooting."

*People v. Combs*, No. A130068, 2013 WL 5405369, at *1-2 (Cal. Ct. App. Sept. 27, 2013).

At the conclusion of trial, the jury found Combs guilty of second-degree murder as an aider and abettor to Williams' killing of Garcia. Combs moved for a new trial on the grounds that there was no substantial evidence that Combs intended to aid and abet any of the alleged target crimes or that murder was a natural and probable consequence of Combs' actions, and that the trial court made a number of instructional errors that warranted relief from the verdict. The Court denied the motion and subsequently denied probation and sentenced Combs to a term of 15 years to life imprisonment.

Through counsel, Combs appealed his conviction, arguing that: 1) there was insufficient evidence to support his murder conviction; 2) the trial court made a number of instructional errors; 3) the trial court erred in failing to grant his motion for acquittal; 4) the trial court erred in denying Combs' *Marsden* motion;[1] 5) the trial court's refusal to allow Combs to present

---

[1] *See People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a

3

evidence in support of his change of venue motion violated Combs' right to due process; 6) the trial court invaded the province of the jury by commenting on the evidence; and 7) the cumulative effect of the errors warranted reversal of his conviction. On September 27, 2013, the Court of Appeal unanimously affirmed the judgment against Combs in its entirety. *Combs*, 2013 WL 5405369, at *10. Combs petitioned for rehearing. Although the Court of Appeal panel slightly modified a footnote in the opinion, it did not alter the judgment and denied rehearing. Combs petitioned for review in the California Supreme Court on the following grounds: 1) the prosecution presented insufficient evidence to sustain the murder conviction; 2) the trial court erred with respect to the attempted extortion instruction charged to the jury; and 3) he was deprived of the right to effective counsel when the trial court denied his *Marsden* motion. The Supreme Court summarily denied the petition on December 18, 2013.

Proceeding *pro se*, Combs then filed in the Superior Court a petition for a writ of habeas corpus. In that petition, Combs claimed that trial counsel was ineffective for failing to conduct a reasonable pre-trial investigation into his allegations that, when he turned himself in, the police told him that he would be given immunity and would be released in a few days and repeatedly forced Combs to meet and give additional statements. Combs also alleged that trial counsel was deficient by advising him to reject an 11-year plea offer that was offered by the prosecution in exchange for him testifying against Williams. According to Combs, counsel told him that he could only be found guilty of being an accessory after the fact, which carried a 4-year sentence. Combs also argued that appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on direct appeal. Finally, Combs contended that his conviction

---

hearing to allow the defendant to explain its grounds).

4

was obtained by police misconduct because, after he was arrested, he was forced to talk to police and his statements were later used against him, even though he invoked his right to remain silent and was not given an attorney as requested. The superior court denied the motion as untimely, with citations to *In re Robbins*, 959 P.2d 311 (Cal. 1998), and *In re Clark*, 855 P.2d 729 (Cal. 1993), and alternatively concluded that Combs failed to state a prima facie case for ineffective assistance and failed to show prejudice.

Combs renewed his ineffective assistance claims in a *pro se* habeas petition filed in the California Court of Appeal, which was denied without comment on March 20, 2015. He also raised those claims in a *pro se* habeas petition filed in the California Supreme Court. Respondent filed an informal response to that petition which included the transcript of the digitally-recorded investigative interview with law enforcement. Trial counsel also submitted an informal response to the petition contradicting Combs' claims. On March 16, 2016, the Supreme Court summarily denied the petition.

Combs then filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on April 9, 2017, the timeliness of which Respondent does not contest. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Combs raises three claims alleging the ineffective assistance of counsel. First, he argues that trial counsel was ineffective for failing to investigation his allegations of unfulfilled promises of leniency. He relatedly contends in Ground 2 that trial counsel was ineffective for failing to move to suppress statements law

enforcement obtained in violation of his *Miranda*[2] rights.  Finally, Combs claims that counsel was ineffective for advising him to reject an offered plea deal.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

---

[2]   *Miranda v. Arizona*, 384 U.S. 436 (1966).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.  Procedural Bar

As an initial matter, Respondent urges the Court to reject Combs' claims as procedurally defaulted. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This

7

Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). "The state-law claim may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011). Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case "clearly and expressly" states that its judgment rests on a state procedural bar. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (quoting *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)). "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default." *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

In considering Combs' state habeas petition, the Superior Court denied each of these ineffective assistance claims as untimely with citation to *In re Robbins*, 959 P.2d 311 (Cal. 1998), and *In re Clark*, 855 P.2d 729 (Cal. 1993), which further reflects that they were deemed untimely, *Walker v. Martin*, 131 S. Ct. 1120, 1126 (2011). The Ninth Circuit has held that California's "substantial delay" timeliness standard satisfies the "independent and adequate" requirement. *See Bennett v. Mueller*, 322 F.3d 573, 582-83 (9th Cir. 2003); *see also Walker*, 131 S. Ct. at 1131 (finding that California's timeliness standard is adequate).

However, the procedural bar is not dispositive in this case. Although the Superior Court explicitly denied the claims as untimely, it also denied the claims on the merits. The California Court of Appeal as well as the California Supreme Court subsequently denied without comment the same claims in Combs' habeas petitions to those courts. Notably, the record reflects that the

8

California Supreme Court apparently requested informal briefing on both claims from Respondent and trial counsel. *See* Docket No. 14-13 at 3, 228. Accordingly, the Supreme Court's denial without explanation or citation impliedly overruled the lower court's timeliness decision. *See Trigueros v. Adams*, 658 F.3d 983, 990 (9th Cir. 2011) (deciding petition on merits where California Supreme Court had requested informal briefing on the merits despite the Superior Court's finding of untimeliness). Consequently, Combs' ineffective assistance claims are not procedurally barred from federal habeas review, and the Court will consider their merits.

B.  Merits

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.[3] *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also*

---

[3] *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (instructing that, where the standard applies, habeas relief is not warranted unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict").

*Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Combs must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

1. Failure to Investigate and Move for Suppression (Grounds 1, 2)

In two related claims, Combs argues that his trial counsel was ineffective for failing to: 1) investigate Combs' claim that his statements to law enforcement were wrongfully induced by unfulfilled promises of leniency; and 2) move to suppress the statements due to the violation of his *Miranda*[4] rights.

---

[4] The record reflects that counsel did in fact move to suppress statements Combs made to law enforcement on September 12, 2008, on the basis of *Miranda*. However, that suppression motion argued that Combs did not make a knowing and intelligent waiver of his *Miranda* rights "due to the officer's suggestion that they were talking off the record." Docket No. 14-5 at 6. It did not allege that Combs invoked his right to counsel. The trial denied the

The record reflects that these issues arose during the trial court's hearing on Combs' *Marsden* motion. In his informal response to Combs' habeas petition filed in the California Supreme Court, Combs' counsel made the following statement:

> Mr. Combs asserts that counsel failed to adequately investigate and suppress his statements and that his statement were induced by promises of leniency. Mr. Combs is correct that he told counsel that he had discussions with Detective Trojanowki that did not appear on the recorded interviews. Counsel, however, recalls the content of those purported statements differently than Mr. Combs' current representation. Mr. Combs alleges in his instant petition that Mr. Combs invoked the right to counsel and silence and that Detective Trojanowski replied, "I want you to listen to me Mr. Combs, If you continue to cooperate with us and continue to truthfully help us with this case, you will be released in a couple of days and asked to truthfully testify against Henry Williams at trial." Mr. Combs also alleges that after a second invocation of his right to silence and counsel the next day, that Detective Trojanowski reiterated his position by stating, "Remember what I told you yesterday? If you continue to help us out, you will be released in a couple days with no charges filed."
> 
> This similar issue was raised during the *Marsden* motion hearing, a transcript of which was attached as Exhibit C to Mr. Combs' Petition. On what is marked as page 920 of the Exhibit C transcript, I acknowledged that Mr. Combs did inform me of his concerns about this issue, and that I did do the research regarding promises of leniency. I further acknowledged the fact that it was not on videotape and that this fact could have been worked around. The bigger issue, however, is that Mr. Combs' representations about his conversations with Detective Trojanowski as represented to this Court, are different from his initial representations to me. Mr. Combs and I discussed his interviews and his off tape conversations with Detective Trojanowski very early in the preparation of the case. I cannot claim to provide you with a verbatim quote of what Mr. Combs told me Detective Trojanowski said to him, but the pertinent information for my purposes contained the following: Any offer of leniency was conditional, Detective Trojanowski was willing to notify the District Attorney of Mr. Combs' cooperation, only the District Attorney could grant Mr. Combs immunity, there was no promise of immediate release, and that Mr. Combs might be released only if and when the District Attorney became involved and made such an offer. While it may have been inartfully phrased, my response in the *Marsden* hearing that, "[t]he cases on promises of leniency really require, from my reading of them, more than this, you know. There was nothing in this indication that the DA was involved in this." (Petitioner Brief, Exhibit C, page 920 of transcript, lines 15-18), was my attempt to explain my reason for not pursuing this area further. Mr. Combs neglected to mention these additional facts in his declaration, but even some of

---

motion, concluding that *Miranda* did not apply because the statements were not made during a custodial interview. Docket No. 14-6 at 140.

> his other exhibits reference that the discussion involved "immunity." Mr. Combs was aware that only the District Attorney could grant him immunity at the time he spoke with police.
>
> At this stage I cannot fully reconstruct my research on this topic, but I was able to refresh my recollection regarding the general overview of this area that I found persuasive at the time. My general practice while I was preparing for Mr. Combs' trial was to start my research with the California Criminal Defense Practice guide. Reviewing the section on involuntariness reminded me of a number of the cases that lead me to conclude that a motion trying to suppress the statements based on leniency was not warranted. (2-30 California Criminal Defense Practice section 30.11.) Each case must be viewed in its totality, including the defendant's experiences, and Mr. Combs' experience with the criminal justice system was such that he would not have understood the officer's comments to be true promises. (People v. Dowdell (2014) 227 Cal. App. 4th 1388.) Defendants needs to believe that the officer has the power to grant or withhold the promise for any subsequent statement to be involuntary. (Id.) Here there could be no such belief because Mr. Combs told me that he knew said promises were conditional and needed the District Attorney's approval. This is precisely the sort of interrogation upheld as voluntary by the court in People v. Ramos (2004) 121 Cal. App. 4th 1194, 1203, where the court ruled that an officer's "statement regarding benefit in the judicial process was immediately qualified by the further admonition that the [officer] would advise the district attorney of [defendant's] level of cooperation, but the district attorney would determine what consideration [defendant] would receive in return for his cooperation."
>
> Based on all these factors, and many additional cases that I reviewed in this area, I determined that pursuing a suppression motion on Mr. Combs' behalf on grounds of promises of leniency would not prove fruitful. Not only would the motion be unlikely to prevail, it would have taken time and focus away from the suppression motion that I did file for Mr. Combs.

Docket No. 14-13 at 228-31.

The admission of a defendant's involuntary statement violates due process. *Colorado v. Connelly*, 479 U.S. 157, 163 (1986). "A confession is involuntary if coerced either by physical intimidation or psychological pressure." *United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004) (internal quotation marks omitted). In determining voluntariness, a court must determine whether, under the totality of the circumstances, including the characteristics of the accused and the details of the interrogation, the police used coercive activity to undermine the defendant's ability to exercise his free will. *See Dickerson v. United States*, 530 U.S. 428, 434

(2000); *Gallegos v. Colorado*, 370 U.S. 49, 52-53 (1962) (noting that length of questioning, use of fear to "break" suspect, and youth of accused are relevant considerations). The determination "depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." *Dickerson*, 530 U.S. at 434 (citations omitted).

In *Miranda*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. Under this rubric, an interrogating officer must first advise the potential defendant that he or she has the right to consult with a lawyer, the right to remain silent and that anything stated can be used in evidence against him or her prior to engaging in a custodial interrogation. *Id.* at 473-74. Once *Miranda* warnings have been given, if a suspect makes a clear and unambiguous statement invoking his constitutional rights, "all questioning must cease." *Smith v. Illinois*, 469 U.S. 91, 98 (1984).

A defendant may waive his *Miranda* rights so long as the waiver is "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A valid waiver of *Miranda* rights depends upon the totality of the circumstances. "The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis v. Thompkins*, 560 U.S. 370, 382-83

(2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Although some earlier Supreme Court cases had indicated the government had a "heavy burden" to show waiver, *Berghuis* explained that the burden is not too onerous. *Berghuis*, 560 U.S. at 384. Indeed, the waiver may be implied by conduct, and need not be explicit or written. *Id.* at 383.

> If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate "a valid waiver" of *Miranda* rights. The prosecution must make the additional showing that the accused understood these rights. Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent. . . . As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.

*Berghuis*, 560 U.S. at 384-85 (citations omitted).

In this case, Combs argues that his confession was unlawfully induced by false promises of leniency and obtained in violation of his *Miranda* rights. But, in light of the reasonable explanation provided by trial counsel in his informal response to Combs' state habeas petition, Combs fails to demonstrate that counsel's actions were objectively unreasonable in not moving to suppress the statement based on Combs' leniency claim. *See Strickland*, 466 U.S. at 690 (counsel's strategic decision, made after a thorough investigation of law and facts, is "virtually unchallengeable"). *see Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel).

Likewise, there is no evidence in the record that supports Combs' assertion that law enforcement violated his *Miranda* rights by ignoring his invocation of the right to counsel. There was, however, evidence in the record to support Combs' claim that police told him what

14

he said to them was "off the record." For example, the transcript of the September 12, 2008, interview reflects that the police told Combs, "Just relax. Okay. We're just talking. There's three of us here talking. Okay? It doesn't go beyond us three right now. Let's just talk this out, okay?" Counsel thus also made a reasonable strategic decision to move to suppress the statements from that interview by arguing that his *Miranda* waiver was not voluntary because it was induced by a promise of being "off the record" rather than making an argument that was not supported by the record. Accordingly, Combs is not entitled to relief on either of his first two grounds.

2. Advice to Reject Plea Offer (Ground 3)

Combs additionally avers that counsel was ineffective for advising him to reject the prosecution's offered plea deal. The *Strickland* standard also applies to claims of ineffective assistance during the plea bargain process. *See Lafler*, 132 S. Ct. at 1384 ("During plea negotiations, defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Specifically, "a defendant has the right to make a reasonably informed decision whether to accept a plea offer." *See Turner*, 281 F.3d at 880 (citation omitted). Accordingly, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012); *see also United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994) ("[A]n attorney's failure to communicate the government's plea offer to his client constitutes unreasonable conduct under prevailing professional standards."). To show prejudice from ineffective assistance of counsel "where a plea offer has lapsed or been rejected because of counsel's deficient performance, [a

15

petitioner] must demonstrate a reasonable probability" (1) he "would have accepted the earlier plea offer"; and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 132 S. Ct. at 1409.

Trial counsel also addressed this claim in his informal response to the habeas petition filed in the Supreme Court:

> I never advised Mr. Combs not to take the offered plea. I engaged in extensive discussions with the District Attorney regarding potential plea offers and informed Mr. Combs of every such offer. Each time I had an offer to present to Mr. Combs I took the time to address his maximum exposure at both trial and under any proffered plea. Mr. Combs knew exactly what his maximum exposure at trial was. I did discuss with Mr. Combs that, based even upon his own version of what happened in the case, he was likely guilty as an accessory after the fact. I never told Mr. Combs that his maximum exposure was as an accessory. Mr. Combs knew he was not charged under that theory. I never told Mr. Combs to either take or reject any plea. As indicated in my response given at the *Marsden* hearing, I took the time to explain what I saw as the "pros and cons" of any potential offer, along with the relevant strengths and weaknesses of his case. I told Mr. Combs, as I told all of my clients, that the decision as [to] whether or not to accept a plea is one that they must make. I answered all of Mr. Combs' questions regarding plea negotiations, he affirmatively indicated that he understood the terms of all offered pleas, he acknowledged he understood all potential sentencing outcomes following a trial, and he then elected to reject the offer and proceed to trial.

Docket No. 14-13 at 231-32.

In evaluating post-conviction claims made by prisoners with regard to their counsel's performance, California courts require a petitioner to provide some corroborating evidence in support of his claims. *See In re Alvernaz*, 830 P.2d 747, 761 (Cal. 1992) (rejecting petitioner's claim that he would have accepted a plea bargain had he been adequately informed by his counsel of the sentence he faced at trial because a petitioner's own declaration was "self-serving and thus insufficient in and of itself " to establish petitioner's claims). In this case, Combs provided no admissible evidence beyond his own declaration for his contention that his trial

16

counsel advised him to reject the plea offer, which counsel contradicted by formal declaration. It was not unreasonable for the California Supreme Court to have rejected Combs' contention as self-serving when he provided no further evidence apart from his own statement. *See id.*; *see also Nunes v. Mueller*, 350 F.3d 1045, 1053 (9th Cir. 2003) (holding that a California court did not rule "contrary to clearly established Supreme Court law" when it followed *In re Alvernaz*, because *In re Alvernaz* "sets forth the same requirements as *Strickland* for demonstrating an ineffective assistance claim in the context of plea bargaining"). California's rule falls squarely within the goals of AEDPA and *Strickland* in providing substantial deference to counsel when a claim for ineffective assistance of counsel is brought after trial. *See Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (petitioner's own self-serving statements insufficient to support claim of ineffective assistance of counsel without corroborating evidence). Combs is thus not entitled to relief on this ineffective assistance claim either.

## V. CONCLUSION AND ORDER

Combs is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 12, 2017.

/s/James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
Senior United States District Judge